**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CALIBER HOME LOANS, INC.,

      Plaintiff,

v.                                                          Case No.

THE PROGRESSIVE CORPORATION,          Hon.
AMERICAN STRATEGIC INSURANCE
CORP. d/b/a PROGRESSIVE HOME, and     **JURY DEMANDED**
TRANSNATION TITLE AGENCY, a
Michigan limited liability company,

      Defendants.

---

Joseph H. Hickey (P41664)
DYKEMA GOSSETT PLLC
Attorneys for Plaintiff
Bloomfield Hills, MI  48304
(248) 203-0700
jhickey@dykema.com

Mark J. Magyar (P75090)
Counsel for Plaintiff
DYKEMA GOSSETT PLLC
Capitol View, 201 Townsend Street, Suite 900
Lansing, Michigan 48933
(616) 776-7523
mmagyar@dykema.com

---

**COMPLAINT FOR DECLARATORY JUDGMENT AND JURY DEMAND**

    Plaintiff Caliber Home Loans, Inc. ("Caliber"), by and through its attorneys, alleges as follows:

**INTRODUCTION**

    1.    This is a declaratory judgment action brought by Caliber against The Progressive Corporation ("Progressive"), American Strategic Insurance Corp. d/b/a Progressive Home ("ASI")

and Transnation Title Agency, a Michigan limited liability company ("Transnation") to determine the parties' rights and obligations with respect to potential claims surrounding certain personal injuries that occurred on October 10, 2020, and the lack of certain homeowners insurance coverage for it. Specifically, Caliber seeks a judicial declaration that Caliber has no liability for the injuries or lack of homeowners insurance at the Property; any liability to anyone for the injuries or lack of homeowners insurance at the Property, if any, rests with Progressive and/or ASI and/or Transnation or others; Progressive and/or ASI and/or Transnation shall defend and/or indemnify and/or reimburse Caliber for any and all amounts paid in defense, settlement, verdict or otherwise if forced to defend a claim by anyone for the subject injuries or lack of homeowners insurance at the Property; and such further relief as the Court seems just.

## JURISDICTION AND VENUE

2.       The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 2201 and 2202.

3.       Plaintiff Caliber is a corporation organized as existing under the laws of the State of Delaware, and has its principal place of business in the State of Texas.

4.       Defendant Progressive is a corporation organized as existing under the laws of the State of Ohio and has its principal place of business in Ohio.

5.       Defendant ASI is a corporation organized as existing under the laws of the State of Florida and has its principal place of business in Florida.

6.       Defendant Transnation is a Michigan limited liability company, having a resident agent address of 921 N. Division St., Grand Rapids, Michigan 49503. Caliber has not identified any member of Transnation that is a Delaware or Texas citizen.

7.       Accordingly, there is complete diversity between the parties.

8.      The matter in controversy, exclusive of interest and costs, exceeds the sum of seventy-five thousand dollars ($75,000).  An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant Transnation has offices in Traverse City and Grand Rapids, Michigan among other places, and because the personal injury incident at issue occurred on October 10, 2020 at the home located at 5483 Timber Flats Dr., Kingsley, Michigan 49649 (the "Property"), Grand Traverse County, which is in the Western District of Michigan, Southern Division. *See* 28 U.S.C. § 102(b)(1).

## GENERAL ALLEGATIONS

### Kellianne Siler's Purchase of the Property, Including Seeking Financing and Homeowners Insurance

10.     Kellianne Siler ("Siler") is an individual residing at the Property. Siler financed the purchase of the Property with a loan of $213,675.00, which closed on January 2, 2020 (the "Closing"). Caliber is Siler's lender for her purchase of the Property. Siler signed a promissory note, secured by mortgage, at the Closing. At the Closing, Transnation, as the closing agent for Caliber, sent a check in the amount of $547 to ASI for the homeowners insurance policy premium.

### The Progressive Policies

11.     For months prior to the Closing, Siler was seeking financing and homeowners insurance for her purchase of the Property. Before Caliber, Siler was working with Quicken Loans as the potential lender.

12.     Progressive, by underwriter ASI, issued no fewer than four homeowners insurance policies for Siler's purchase of the Property.

13. Progressive issued policy number **MIA117307** with an inception date of <u>November 15, 2019</u>. On information and believe, Quicken Loans, Inc. was listed as the 1st Mortgagee loss payee on this policy.

14. Progressive issued policy number **MIA117679** with an inception date of <u>December 20, 2019</u>. The Homeowners Declaration Page for this policy states that it was "rewritten from MIA117307 to change the inception date from 11/15/2019." On this policy, the 1st Mortgagee loss payee was still listed as Quicken Loans, Inc.

15. On November 19, 2019, Caliber notified Progressive and ASI that Caliber, not Quicken Loans, should be listed as the first mortgagee loss payee on the homeowners insurance policy.

16. Progressive issued policy number **MIA119711** with an inception date of <u>November 27, 2019</u>. Caliber was listed as the 1st Mortgagee loss payee on this policy. The Homeowners Declaration Page for this policy states that it was "rewritten from MIA117679 to change the inception date from 12/20/2019." Progressive sent a notice to Siler dated November 21, 2019 (six days before the inception date of this policy), stating that the premium payment of $547 for this policy was due by November 27, 2019.

17. Under each of the above three policies (MIA117307, MIA117679, MIA119711), the initial policy premium due was $547, and the coverage limits were $374,000 for dwelling coverage and $300,000 for personal liability. But the Closing did not occur on any of the inception dates for these policies, which all predated the Closing.

18. Progressive issued policy number **MIA123489** with an inception date of January 2, 2020, i.e., the date of Closing (the "Closing Policy"). Caliber has never received a copy of, or seen, the Closing Policy.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

**The Closing**

19.     At the January 2, 2020 Closing, Transnation, as closing agent for Caliber, mailed Transnation check number 10007 in the amount of $547.00 to ASI for the homeowners insurance premium. This payment should have been made by Transnation, and accepted and applied by Progressive and ASI, to the Closing Policy (Progressive policy number MIA123489), having an inception date of January 2, 2020 coinciding with the Closing date.

20.     However, the Transnation check to ASI was incorrectly sent by Transnation and/or incorrectly received and processed by Progressive and ASI *with reference to the earlier Progressive policy number MIA119711*, having the inception date of November 27, 2019. In other words, neither Transnation or Progressive/ASI connected the January 2, 2020 payment of $547 at Closing to the January 2, 2020 Closing Policy issued by Progressive/ASI.

**Progressive's Rejection of The Premium Check
And Notice of Cancellation Of The Closing Policy**

21.     On January 17, 2020, Progressive/ASI sent a "Notice of Intent to Cancel Final Notice of Premium Due" to Siler (the "Cancellation Notice"). The Cancellation Notice referenced the Closing Policy, issued with inception date January 2, 2020, policy number MIA123489. The Cancellation Notice stated that the overdue premium must be received by February 1, 2020 or the Closing Policy would be cancelled as of February 1, 2020. The Cancellation Notice stated that the amount due was $576. On information and belief, this amount represented the $547 premium originally due as of January 2, 2020 plus prorated amounts as a result of what Progressive/ASI incorrectly believed was an overdue payment.

22.     On Sunday, February 2, 2020 – the day after Progressive/ASI cancelled the Closing Policy – Siler sent a picture of the January 17 Cancellation Notice via text message to her local Caliber mortgage broker, Helen Caverson. Ms. Caverson immediately contacted Transnation,

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

obtained the premium payment details, including that Transnation check number 10007 in the amount of $547 was sent to ASI on January 2, 2020, and shared these findings with Siler.

23. Caliber learned that the Closing Policy existed due to this text message from Siler on February 2, 2020, because the copy of the Cancellation Notice that Siler texted to Ms. Caverson included reference to the Closing Policy number, MIA123489, and the inception date of January 2, 2020.

24. On or about March 19, 2020, Progressive/ASI, after cancelling the Closing Policy, *returned to Transnation as rejected* the check for $547 that Transnation had sent to Progressive/ASI at the time of Closing. The stated reason for the rejection was that the "Policy is cancelled." This return of the check by Progressive/ASI again referenced Progressive policy number MIA119711, having the inception date of November 27, 2019, rather than the Closing Policy.

25. Had Transnation referenced the correct policy number when sending the check on the day of Closing and/or Progressive/ASI applied the premium payment it received from Transnation to the correct policy, no cancellation should have occurred. As it turned out, though, there was no homeowners insurance on the Property due to the cancellation.

26. On March 19, 2020, Transnation sent $547 to Siler as a refund of the payment that Progressive/ASI rejected. Siler cashed the refund check on March 27, 2020.

### The Firepit Explosion at the Property on October 10, 2020

27. On October 10, 2020, Siler had a bonfire in her firepit at the Property. Besides Siler, Siler's then twelve-year-old son as well as her friend, Ashely O'Mara, were in attendance, among others.

28.     An accident occurred when Siler's son allegedly approached the fire with a can of gas allegedly intending to pour gas on the fire. According to a lawsuit later filed by Ms. O'Mara, the fire caught the gas and followed it to the source, causing the gas can to explode. Ms. O'Mara was very badly burned in the accident, as was Siler's son.

### O'Mara's Lawsuit And Siler's Demands Upon Caliber

29.     On April 8, 2021, O'Mara filed a lawsuit against Siler in the Grand Traverse County Circuit Court, Case No. 2021-35761, regarding the fire explosion and her injuries, alleging negligence by Siler and her son.

30.     Well before O'Mara even filed this lawsuit, a lawyer on behalf of Siler contacted Caliber via letter dated February 15, 2021. The title of the letter stated it was a "**NOTICE OF REPRESENTATION**," "**TENDER OF DEFENSE**," "**DEMAND FOR INDEMNIFICATION**," and "**NOTICE OF CLAIM**."

31.     In this correspondence, Siler's attorney faulted Caliber for the lack of homeowners insurance and stated that O'Mara's attorney had stated his intention to file a lawsuit seeking "in excess of seven figures" in monetary damages for O'Mara's catastrophic burn injuries.

32.     Siler demanded that "Caliber Home Loans, Inc., and/or Transnation Title Agency accept [Siler]'s tender of defense" and that "Caliber Home Loans, Inc., and Transnation Title Agency indemnify and hold [Siler] harmless from any verdict, settlement, or other disposition of Ms. O'Mara's claims." Further, this letter stated that "[d]emand is also made for [Siler]'s consequential damages incurred including, but not limited to, [Siler]'s attorney fees and costs." Finally, the letter stated, "please also accept this correspondence as notice of [Siler]'s claim(s) against Helen Caverson and Caliber Home Loans, Inc., and Megan Seaver and Transnation Title Agency."

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

33.     Siler's attorney enclosed a copy of O'Mara's lawsuit with his April 20, 2021 letter correspondence to Caliber's counsel.

34.     Around this same timeframe, Siler's counsel was corresponding with Transnation. Via letter dated February 22, 2021, Transnation rejected all assertions that Transnation committed any actionable conduct with respect to its handling of the Closing and issuance of the check to pay the Progressive/ASI homeowners insurance premium.

## Insurance Coverage For Siler

35.     As it turned out, Siler and her son were still named insureds on Siler's ex-husband's (the son's father) insurance policy with Auto Owners Insurance. Siler and her son obtained their defense to the lawsuit under this coverage. On information and belief, the policy limit of the Auto Owner's Insurance Policy was $500,000.

## Litigating and Settling the O'Mara's Lawsuit

36.     Caliber never became a party to the O'Mara lawsuit. However, both O'Mara's attorney and the defense attorney for Siler and her son, hired by Auto Owners, made multiple oral statements to counsel for Caliber that they had not ruled out pursuing claims against Caliber.

37.     O'Mara issued a third-party subpoena to Caliber during the litigation, with which Caliber fully complied and produced documents.

38.     Caliber's counsel discussed with the Auto Owners defense counsel that defense counsel should seek all records relating to all policies issued from Progressive/ASI. Defense counsel said he would subpoena Progressive/ASI, but, on information and belief, he never did.

39.     The parties mediated O'Mara's lawsuit in September 2021 and reached a settlement. The O'Mara Lawsuit was dismissed due to settlement by order of the Grand Traverse County Circuit Court entered November 15, 2021.

8

40.     Caliber's counsel has sent multiple emails and made repeated phone calls to O'Mara's counsel and the defense counsel supplied by Auto Owners, all of which have been unanswered. Caliber does not know any of the terms of the settlement between O'Mara and Siler/Auto Owners, which are likely confidential. Based on the injuries sustained by O'Mara and Siler's son, it is probable that the policy limits of the Auto Owners policy did not fully settle the case.

41.     Because no party in the O'Mara lawsuit appears to have issued subpoenas to Progressive/ASI or Transnation in that litigation, Caliber has undertaken to obtain these records from Progressive/ASI and Transnation. Progressive/ASI has not responded to Caliber's December 22, 2021 letter requesting policy documents by January 7, 2021, nor did it respond to Caliber's follow up request regarding the status of production. Transnation's production was minimal and did not provide any new information.

42.     It is possible, if not probable, that O'Mara and/or Auto Owners reserved in the settlement the right to seek excess damages or indemnification or other damages against Caliber. It is also possible that Siler may bring claims against Caliber, as her attorney initially stated she would in his February 15, 2021 letter.

43.     Regardless of whether any of these possibilities occur in the future, Caliber has notice directly from O'Mara's and Siler's attorneys that such actions have been and may still be contemplated, more than establishing an actual controversy.

## COUNT I

## DECLARATOR JUDGMENT THAT CALIBER HAS NO LIABILITY FOR THE PROPERTY NOT BEING INSURED UNDER A HOMEOWNER'S INSURANCE POLICY

44.     Caliber incorporates by reference the allegations of paragraphs 1 through 43 of this complaint.

45.    There is a genuine and bona fide dispute, and an actual controversy and disagreement between Caliber and Progressive/ASI and Transnation as to liability, if any, for the pesonal injuries sustained and lack of homeowners insurance on the Property owned by Ms. Siler when the October 10, 2020 accident at the Property occurred.

46.    Caliber has no fault in the injuries or lack of homeowners insurance. Quite the opposite, Caliber was an intended additional insured and/or loss payee on the policy as the mortgagee with an interest in preserving its collateral. Caliber's interests were prejudiced by the lack of homeowners insurance.

47.    Caliber did not attend and was not tasked with running the Closing, which was Transnation's role as closing agent. Transnation, as the closing agent, failed to follow and/or breached Caliber's closing instructions, and was negligent, in not making the premium payment to Progressive/ASI with reference to the correct Progressive/ASI policy having an inception date January 2, 2020, policy number MIA123489.

48.    Progressive/ASI breached the Progressive/ASI insurance policy having an inception date of January 2, 2020, policy number MIA123489, and was negligent in not accepting the premium payment dated January 2, 2020 it received from Transnation and applying the payment to policy number MIA123489. Progressive/ASI should have realized when receiving the check that it was dated the same day as the closing for the Property it pertained to, that it coincided with the policy issued for that Property bearing the same date, and that it made no sense that the payment would be for a policy dated November 27, 2019 that was already canceled and for which no closing occurred.

49.    Progressive/ASI also breached the Progressive/ASI insurance policy having an inception date of January 2, 2020, policy number MIA123489, and was negligent, in not providing

Caliber with proper notices as the additional insured and loss payee. Had Progressive provided proper notices to Caliber, Caliber may have been able to identify and remedy the errors committed by Progressive/ASI and Transnation before any lapse of coverage or before the October 10, 2020 accident at the Property. Indeed, Caliber assisted Siler in placing insurance after the accident.

50.     Clearly, someone within Progressive/ASI and/or Transnation realized that a new policy was needed when the Closing did not occur on any of the earlier policy dates, and caused to be issued policy number MIA123489 that had a beginning coverage date that coincided with the Closing, January 2, 2020, and it was negligent to not thereafter make and receive the premium payment in connection with that policy.

51.     Siler did not contact Caliber via text regarding the Cancellation Notice until after the policy was already cancelled, and Siler thereafter cashed the returned premium check in March 2020 without securing replacement coverage. Thus, to the extent that any party to this case has any liability, it is Progressive/ASI and/or Transnation or other, not Caliber.

WHEREFORE, Caliber Home Loans, Inc. respectfully requests the following relief:

A.     A declaration that Caliber has no liability for the subject injuries sustained at the Property on October 10, 2020 or the lack of homeowners insurance at the Property;

B.     A declaration that any liability to O'Mara, Siler, Auto Owners, or anyone else for the subject injuries sustained at the Property on October 10, 2020 or the lack of homeowners insurance at the Property rests with Progressive and/or ASI and/or Transnation;

C.     A declaration that Progressive and/or ASI and/or Transnation shall defend and/or indemnify and/or reimburse Caliber for any and all amounts paid in defense, settlement, verdict or otherwise if forced to defend a claim by anyone for the subject injuries sustained at the Property on October 10, 2020 or the lack of homeowners insurance at the Property.

D.     Such other relief as the Court determines appropriate.

**JURY DEMAND**

Caliber hereby demands a jury on all claims so triable.

DYKEMA GOSSETT PLLC

Dated: January 31, 2022

By:  */s/ Mark J. Magyar*

Joseph H. Hickey (P41664)
DYKEMA GOSSETT PLLC
Attorneys for Plaintiff
Bloomfield Hills, MI  48304
(248) 203-0700
jhickey@dykema.com

Mark J. Magyar (P75090)
Attorneys for Plaintiff
Capitol View Bldg.
201 Townsend Street, Suite 900
Lansing, Michigan 48933
Telephone: (616) 776-7523
mmagyar@dykema.com

106268.000067  4890-0493-3132.1